Betty Phillips et al., Respondents, *v.* Roux Laboratories, Inc., et al., Appellants.

First Department, November 7, 1955.

*Ralph Stout* of counsel (*William J. Hayes* with him on the brief; *Mathews, Hampton & Mahoney,* attorneys), for appellants.

*Benjamin H. Siff* of counsel (*Harold L. Glasser,* attorney), for respondents.

Cox, J.   Defendants, manufacturer and distributor of the product Roux Hair Dye, appeal from a judgment entered upon a jury's verdict in favor of the plaintiffs.

Plaintiff, Betty Phillips, purchased Roux Hair Dye from her regular druggist and first applied it to her hair in December, 1949, with satisfactory results.   On January 9, 1950, she bought another package of the same dye and applied it to her hair and sustained the injuries about which she complains.   She testified that she implicitly followed the directions enclosed in the package which she purchased.   She alleges she made the patch test according to the directions.   Again, in compliance with the directions, she examined the patch area twenty-four hours later and observed no reaction whatever.   Within a half hour after examining the area, she applied the hair dye.   In accordance with the booklet of instructions, the user is directed to wash an area about the size of a quarter on the inner fold of the elbow or behind either ear and extending partly into the hairline.   The area is dried and then a test solution is applied, which consists of equal portions of the dye and 20% volume hydrogen peroxide.   The test area is to be left uncovered and undisturbed for twenty-four hours.   Pursuant to the instructions, the user is to " Then examine the test area within the next 24 hours.   If

found negative, the application of the Dye must then be made immediately.''

Plaintiff sought to fasten liability solely by reason of the alleged inadequacy of the pre-use test prescribed by defendants.

Plaintiffs' expert testimony established that the Roux Hair Dye contains phenylendiamine (a coal-tar derivative) referred to during the trial as the '' P chemical ''. The P chemical is not harmful and dangerous to all users but only to those who might be sensitized to it. The approximate number of hair dye applications made in the United States each year is sixty-five million, with 95% of the hair dyes containing the P chemical. Plaintiffs' expert proof challenged the adequacy of the instructions accompanying the hair dye package, and opinions were given by their three medical experts that the test area should be observed for periods from seventy-two hours to as long as a week so as to catch any delayed reaction. No testimony was adduced to demonstrate that the injured plaintiff was a delayed reaction case.

Under the terms of section 361 of title 21 of the United States Code, a coal-tar hair dye must bear a cautionary label together with adequate directions for preliminary testing. By section 371 of the same title, the Secretary of Health, Education and Welfare is granted authority to promulgate regulations. On October 17, 1938, the Food and Drug Administration sent a notice to the manufacturers of hair dye preparations setting forth proposed directions for making the preliminary skin test. Thereupon the defendants, by an exchange of correspondence, received approval of the instructions now assailed as inadequate. The court should have received that correspondence in evidence.

Also, section 131 of the Sanitary Code of the City of New York provides that coal-tar hair dyes must contain on the package a cautionary label with printed instructions for making a preliminary test '' the text of which is acceptable to the Department of Health.'' There was likewise error in excluding from evidence the letter of January 17, 1939, from the Department of Health regarding the sufficiency of the instructions now in question. Just as failure to comply with a statute and regulations promulgated thereunder is evidence of negligence, full compliance therewith is some evidence of the exercise of due care in preparing and publishing instructions for the guidance of consumers in the use of a hair dye preparation containing a coal-tar product. Although section 6810 of the Education Law refers to the instructions to accompany the sale of a coal-tar hair dye, unlike the above provisions of the United States Code and

section 131 of the Sanitary Code, no procedure is established for approval of such instructions and consequently section 6810 is irrelevant.

The court should not have rejected the testimony offered by defendants to establish the usage and custom in the hair dye industry with respect to instructions for making the pre-use test. Recently this court in *Liebrecht* v. *Gotham Sanitarium* (284 App. Div. 781) held that general usage, although not conclusive, may be useful in establishing negligence or freedom from negligence. The error in this regard was compounded by the reception of expert testimony for plaintiffs with respect to the general practice of conducting patch tests in the medical profession.

The court should not have permitted plaintiffs' attorney to read to the jury from certain medical books upon which one of the experts based his opinion. The opinion of the expert who testified thus became of secondary importance and the opinion expressed in the works of the experts became of primary importance without the defendants having had an opportunity to cross-examine those experts concerning their conclusions.

Furthermore, the instructions to the jury were too broad and in some instances erroneous. The jury was instructed a number of times that defendants were charged with negligence in putting on the market a product that was inherently dangerous and poisonous despite the fact that the plaintiffs maintained only that the instructions for guiding consumers in the use of the product were inadequate. In addition, the court should have charged defendants' request that no inference was to be drawn by the jury from the failure of the defense to call one Dr. Wolf who conducted a pretrial medical examination of the injured plaintiff. His examination undoubtedly related only to the permanent nature of the injuries sustained and was unrelated to the adequacy of the pre-use test.

On the new trial which we are compelled to direct, the charge should be precise and specifically related to the narrow claim of liability (*Lewis* v. *Olympia Provision & Baking Co.*, 282 App. Div. 227, 229; *Montes* v. *Bohack Co.*, 284 App. Div. 448, 454).

Accordingly, the judgment should be reversed and a new trial ordered.

PECK, P. J., BREITEL, BASTOW and BERGAN, JJ., concur.

Judgment unanimously reversed and a new trial ordered.